UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILLY MIKALI AMDUSO, et al.<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC OF SUDAN, et al.<br><br>Defendants. | Civil Action No. 08-1361<br>(JDB)/(JMF) |
| WINFRED WAIRMU WAMAI, et al.<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC OF SUDAN, et al.<br><br>Defendants. | Civil Action No. 08-1349<br>(JDB)/(JMF) |
| JUDITH ABASI MWILA, et al.<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC OF SUDAN, et al.<br><br>Defendants. | Civil Action No. 08-1377<br>(JDB)/(JMF) |

|  |  |
|---|---|
| MARY ONSONGO, et al.<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC OF SUDAN, et al.<br><br>Defendants. | Civil Action No. 08-1380<br>(JDB)/(JMF) |

## REPORT OF SPECIAL MASTER
(Estate and Survivors of Francis Watoro Maina)

On August 7, 1998 the United States Embassy in Nairobi, Kenya was destroyed by a suicide bombing that killed more than 200 people and injured over 4,000. On November 11, 2011, the United States District Court for the District of Columbia determined that the defendants are liable for the damages caused by the bombing.

This is an action for damages arising from the wrongful death of Francis Watoro Maina, who died as a result of injuries sustained in the August 1998 bombing. Claims for damages have been asserted by his estate, by his wife, and by his two children.

In arriving at the recommendations set forth below the Special Master has reviewed the following uncontradicted evidence submitted by Plaintiffs' counsel:

1. Death certificate for Francis Watoro Maina
2. Deposition testimony of Mr. Maina's wife and children
3. A written expert report submitted by the Center for Forensic Economic Studies, analyzing the wages and benefits Mr. Maina would likely have received had he not been killed in the bombing
4. Written responses to questionnaires containing questions posed by Plaintiffs' counsel to Mr. Maina's wife and children
5. A written statement prepared by Mr. Maina's wife
6. Several photographs of Mr. Maina and his family

The Special Master has not conducted hearings, examined witnesses, nor challenged the authenticity or veracity of the uncontradicted evidence submitted by Plaintiffs' counsel. Plaintiffs' counsel have affirmed that all available evidence bearing on the damages suffered by the Plaintiffs has been supplied, and that the documents provided to the Special Master are genuine and are complete, accurate copies of the originals. Plaintiffs' counsel has seen this Report and has raised no objection.

Finally, the Special Master has met with Plaintiffs' counsel and with CFES, and has conferred with them by phone, in an effort to assure that the evidence provided is as complete and as reliable as possible, given the destruction of the Nairobi embassy and all the records contained therein.

As directed by the Court in its February 27, 2012 Order Adopting Administrative Plan, the Special Master has applied federal law to determine the scope of damages applicable to wrongful death claims by the decedent's estate, and the law of the District of Columbia to determine the scope of damages applicable to wrongful death claims by Mr. Maina's surviving family members.

Also as directed by the Court in February 27, 2012 Order Adopting Administrative Plan, the Special Master has employed as guideposts the damage awards approved in the *Peterson* and *Dammarell* cases, which arose from the bombing of the U.S. Marine barracks in Beirut, Lebanon.

## I. SUMMARY

The late Francis Watoro Maina was a citizen of Kenya, employed by the US Embassy in Nairobi for about a year and eight months before he died in the bombing on August 1998.[1] At the time of his death Mr. Maina was 34 years old. He worked at the Embassy as a shipping clerk.[2] At the time of his death his annual level of pay was approximately $7,492.[3]

Mr. Maina was survived by his wife Grace Njeri Kimata and their two children—Victor Maina Watoro and Rachael Wambui Watoro. At the time of her husband's death Ms. Kimata was 30 years old and Victor was four years old; Ms. Kimata was eight months pregnant with Rachael Wambui Watoro, who was born October 19, 1998.

For the reasons set forth below, I recommend that damages, including prejudgment interest, be awarded to the Estate of Francis Watoro Maina, and to his surviving spouse and children, in the following amounts:

| | |
|---|---|
| Estate of Francis Watoro Maina | $585,109 |
| Grace Njeri Kimata (spouse) | $22,616,600 |
| Victor Maina Watoro (son) | $11,308,300 |

Because I recommend that her claims be dismissed, I do not recommend any damages for Rachael Wambui Watoro.

---

[1] Grace Njeri Kimata Dep. Tr. at 3:22-23 (Nov. 4, 2009).
[2] *See* Death Certificate; Kimata Dep. Tr. at 3:21.
[3] CFES Report at 2.

## II. ESTATE OF FRANCIS WATORO MAINA

In wrongful death cases arising out of the bombing of the US Embassy in Nairobi, the Court has advised the Special Masters to be guided by the damage awards set out in *Peterson v. Islamic Republic of Iran*, 515 F. Supp.2d 25 (D.D.C. 2007).[4]

    A. <u>Pecuniary Loss</u>. In cases involving foreign nationals employed by the U.S. Government, such as Mr. Maina, federal law applies.[5] Pursuant to 28 U.S.C. § 1605A Mr. Maina's estate is entitled to recover for pecuniary losses resulting from the loss of financial support the decedent could have been expected to provide the next of kin had he lived, including the value of lost services.[6]

According to the Center for Forensic Economic Studies ("CFES"), whose report is supported by uncontradicted evidence,

    (1)    the net present value of Mr. Maina's earnings from the time of his death until age 60 is $192,852,[7]
    (2)    the present value of lost household services is $165,087.[8]
    (3)    pre-judgment interest is $227,170.[9]

The total amount of economic damages, including prejudgment interest, is $585,109.

Therefore I recommend that a total of $585,109 be awarded to Mr. Maina's estate for pecuniary loss.

    B. <u>Pain and Suffering</u>. In *Peterson*, the amount awarded to the decedent's estate for pain and suffering was based on the duration and extent of suffering before death.[10] No damages were awarded for pain and suffering if death was immediate.[11]

---

[4] Order Adopting Administrative Plan, at 5.
[5] *Id.* at 2.
[6] *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82 (D.D.C. 2010) ("[E]states of those who did not survive can recover economic losses stemming from wrongful death of the decedent . . . .").
[7] *See* CFES Report at 3. With respect to Mr. Maina's earnings, neither Plaintiffs' counsel nor CFES was able to obtain from the family or from the U.S. Government any records of Mr. Maina's actual rate of compensation. CFES arrived at its estimate of $7,492 per year by using earnings information from Lydia Mukiri Mayaka—who was also employed as a shipping clerk at the Embassy. *Id.* at 2 n.1.
[8] *Id.* at 3.
[9] *Id.* The Court has elected to apply prejudgment interest to all claims, and has requested that the Special Masters use the average prime rate to determine pre-judgment interest. CFES calculated the pre-judgment-interest multiplier at 1.26166. This multiplier represents the average prime rate from August 7, 1998 to December 31, 2013, compounded.
[10] *Peterson*, 515 F. Supp. 2d at 53.
[11] *See generally, id.* at 53-54.

In this case, there is no evidence that Mr. Maina survived the initial blast. Therefore, I do not recommend any additional pain and suffering damages based on survival after the initial blast.

It is my recommendation that damages be awarded to the Estate of Francis Maina in the amount of $585,109.

### III.   GRACE NJERI KIMATA (Spouse)

As the surviving spouse of a U.S. Embassy employee killed in the bombing, Ms. Kimata is entitled to maintain an action for Intentional Infliction of Emotional Distress (IIED), seeking emotional damages (solatium) to compensate her for "the mental anguish, bereavement and grief that... [she] experience[d] as the result of the decedent's death, as well as the harm caused by the loss of the decedent's society and comfort."[12] The Court has directed that in evaluating such claims "the Special Masters shall be guided by the damage awards set out in *Dammarell*."[13]

In *Dammarell*, the surviving spouse of a victim of the terrorist bombings of the Beirut Marine barracks was awarded damages of $10,000,000.[14]

Grace Njeri Kimata had been married to Francis Watoro Maina for seven years at the time of his death.[15] From Ms. Kimata's testimony, it is evident that she and her husband had a loving relationship.[16] Ms. Kimata spent six days searching before finding her husband's body.[17] She found her husband's body only after being told he was alive, and viewing two bodies that were not her husband's.[18] When she found her husband, she had to identify him by a birth mark, since his body had been mangled by the blast.[19] Both the circumstances of Mr. Maina's death and the state of his body caused Ms. Kimata tremendous grief.[20]

Applying as guideposts the damages awarded in *Dammarell*, it is my recommendation that damages be awarded to Grace Njeri Kimata in the amount of $10,000,000. After applying pre-judgment interest, the total amount is $22,616,600.

---

[12] *Valore*, 700 F. Supp. 2d at 88.
[13] Order Adopting Administrative Plan at 5(citing *Dammarell v. Islamic Republic of Iran*, 404 F. Supp. 2d 261 (D.D.C. 2005)).
[14] *Dammarell*, 404 F. Supp. 2d at 310-11.
[15] Kimata Dep. Tr. at 1:24.
[16] *Id.* at 2:4-6, 18:12-18.
[17] *Id.* at 11:11, 14:1-4.
[18] *Id.* at 9:17-19, 10:21-24, 13:6-10.
[19] *Id.* at 14:15-19.
[20] *Id.* at 14:3-4.

## IV.     VICTOR MAINA WATORO (Son)

In *Dammarell*, the surviving children of victims of the terrorist bombings at the Beirut Marine barracks were awarded damages of $5,000,000.[21]

Victor Maina Watoro is the eldest child of Francis Watoro Maina and Grace Njeri Kimata; he was the only child of Francis Maina living at the time of Mr. Maina's death. He was four years old at the time of the Embassy bombing.[22] According to his uncontradicted deposition testimony, Victor remembers being held by and traveling with his father.[23] Victor was very young when his father died, but his father's death has caused him emotional pain.[24]

Applying as guideposts the damages awarded in *Dammarell*, it is my recommendation that damages be awarded to Victor Maina Watoro in the amount of $5,000,000. After applying pre-judgment interest, the total amount is $11,308,300.

## V.     RACHAEL WAMBUI WATORO (Daughter)

Rachael Wambui Watoro is the daughter of Francis Watoro Maina. At the time of Mr. Maina's death, Ms. Kimata was eight months pregnant with Rachael.[25] The United States District Court for the District of Columbia has held that third-party claims for IIED may be brought only by those in the victim's immediate family at the time of the attack.[26] Because she had not been born at the time of the attack, I recommend that the Court dismiss the claim of Rachael Wambui Watoro due to lack of standing.

May 6, 2014

Respectfully Submitted,

_____
John D. Aldock, Special Master

---

[21] *Dammarell* at 313-319.
[22] Victor Maina Wotoro Dep. Tr. at 2:16-17 (June 28, 2010).
[23] *Id.* at 3: 2-4.
[24] *Id.* at 3:9-11.
[25] Kimata Dep. Tr. at 3:9-11.
[26] *See Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 15 (D.D.C. 2012) (finding that in order for attack to have been "directed at" the relative of a decedent so as to trigger liability for IIED, relative must have been alive at time of attack); *Peterson*, 515 F. Supp. 2d at 45 ("Accordingly, this Court finds that those members of the families of the servicemen who are not within the immediate family of the serviceman *at the time of the attack* may not recover."); *cf. Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 33 (D.D.C. 2012) (dismissing claim of child born after attack).